IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
Southern Division

STEPHANIE HOLLAND                  *
ex rel. K.H., a minor,             *
                                   *
        Plaintiff,                 *
                                   *          Civil No. TMD 13-1241
        v.                         *
                                   *
                                   *
CAROLYN W. COLVIN,                 *
Acting Commissioner of Social Security, *
                                   *
        Defendant.                 *
                        ************

MEMORANDUM OPINION GRANTING PLAINTIFF'S
ALTERNATIVE MOTION FOR REMAND

        Stephanie Holland ("Plaintiff") on behalf of her minor son ("K.H.") seeks judicial review

under 42 U.S.C. §§ 405(g) and 1383(c)(3) of a final decision of the Commissioner of Social

Security ("Defendant" or the "Commissioner") denying her application for Supplemental

Security Income ("SSI") under Title XVI of the Social Security Act.   Before the Court are

Plaintiff's Motion for Summary Judgment and Alternative Motion for Remand (ECF No. 12) and

Defendant's Motion for Summary Judgment (ECF No. 14).[1]   Plaintiff contends that the

administrative record does not contain substantial evidence to support the Commissioner's

decision that K.H. is not disabled.   No hearing is necessary.   L.R. 105.6.   For the reasons that

follow, Plaintiff's Alternative Motion for Remand (ECF No. 12) is **GRANTED**.

---

[1] The Fourth Circuit has noted that, "in social security cases, we often use summary judgment as
a procedural means to place the district court in position to fulfill its appellate function, not as a
device to avoid nontriable issues under usual Federal Rule of Civil Procedure 56 standards."
*Walls v. Barnhart*, 296 F.3d 287, 289 n.2 (4th Cir. 2002).   For example, "the denial of summary
judgment accompanied by a remand to the Commissioner results in a judgment under sentence
four of 42 U.S.C. § 405(g), which is immediately appealable."   *Id.*

# I

## Background

On December 31, 2008, Plaintiff protectively applied for SSI on behalf of K.H., who was born in 2001, alleging disability beginning on July 2, 2007, due to attention-deficit hyperactivity disorder ("ADHD").   R. at 18, 121-27, 134, 138.   The Commissioner denied Plaintiff's application initially and again on reconsideration; consequently, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ").  R. at 66-70, 72, 74-76.  On March 10, 2011, ALJ C.J. Sturek held a hearing in Washington, D.C., at which Plaintiff and K.H. testified.  R. at 33-65.  On April 11, 2011, the ALJ issued a decision finding K.H. not disabled since the application date of December 31, 2008.  R. at 15-32.  Plaintiff sought review of this decision by the Appeals Council, which denied Plaintiff's request for review on February 26, 2013.  R. at 1-4, 12-14. The ALJ's decision thus became the final decision of the Commissioner.  20 C.F.R. § 416.1481.

On April 26, 2013, Plaintiff filed a complaint in this Court seeking review of the Commissioner's decision.  Upon the parties' consent, this case was transferred to a United States Magistrate Judge for final disposition and entry of judgment.   The case subsequently was reassigned to the undersigned.  The parties have briefed the issues, and the matter is now fully submitted.

# II

## Summary of Evidence

### A.   Jacquelyn Calbert, M.D. (Children's National Medical Center)

On July 24, 2007, K.H. underwent a neurodevelopmental pediatric examination by Dr. Calbert (incorrectly identified by the ALJ as Dr. Robert Gancayco), which the ALJ summarized as follows:

> [K.H.'s] mother reported a short attention span, acting and speaking without thinking, irritability, and problems relating to other children. The WRAT-4 revealed good word reading, spelling, and math abilities. Further testing showed limitations in visual motor skills and auditory memory. Dr. [Calbert] diagnosed combined type attention-deficit hyperactivity disorder ("ADHD") complicated by language disorder associated with weak auditory memory. [She] recommended classroom accommodations, a daily schedule with rewards for staying on schedule, and consistent behavior modification.

R. at 22; *see* R. at 211-15.

**B.**   **Robert Foster, Ph.D.**

On April 19, 2009, Dr. Foster, a licensed psychologist, conducted a consultative psychological evaluation of K.H. (R. at 216-224), as summarized by the ALJ:

> [K.H.] achieved a full scale IQ of 85 on the WISC-IV, indicating low average intellectual functioning. His verbal comprehension index was in the 83rd percentile; his perceptual reasoning was average; his working memory index was in the 95th percentile[;] and his processing speed index was in the average range. His scores on the WRAT-4 were in the average range, with the exception of his spelling score, which fell in the low average range. Dr. Foster diagnosed combined type ADHD by the history reported by [K.H.'s] mother.

R. at 23.

**C.**   **State Agency Medical Consultants**

On April 20, 2009, C. Sarno, M.D., a state agency medical consultant, opined that K.H.'s functional limitation in attending and completing tasks was marked. R. at 227. His functional limitations in acquiring and using information, in interacting and relating with others, and in caring for himself were less than marked. R. at 227-28. K.H. had no functional limitation in moving about and manipulating objects. R. at 228. Dr. Sarno did not indicate an opinion as to the degree of K.H.'s functional limitation regarding his health and physical well-being. R. at 228. Accordingly, Dr. Sarno found that K.H.'s impairments did not functionally equal a listed impairment. R. at 229.

On January 6, 2010, M. Wild, M.D., another state agency medical consultant, also opined that K.H.'s functional limitations in acquiring and using information, in interacting and relating with others, and in caring for himself were less than marked.  R. at 239-40.  Dr. Wild did not provide an opinion as to the degree of K.H.'s functional limitations regarding his moving about and manipulating objects and his health and physical well-being.  R. at 240.  Dr. Wild thus also found that K.H.'s impairments did not functionally equal a listed impairment.  R. at 241.

**D.     Kathyrn West**

On January 12, 2009, Ms. West, K.H.'s first-grade teacher, wrote a letter describing K.H.'s behavior in her class.  R. at 179.  She noted that K.H. was moved into her class in November 2008 as a result of aggressive behavior in another classroom.  R. at 179.  K.H. "wants to be a part of the group, and is quick to reach out to new friends.  He is an excitable learner who loves to read and do math.  You can tell he wants nothing more than to please his teacher."  R. at 179.

> However, I have noticed an overarching impulsivity in [K.H.'s] behavior.  When in class, he does not seem to think before he acts.  For example, when we are sitting on the carpet and reading a quiet book, he often screams out whatever is on his mind.  This type of behavior is often very disruptive to other students.  Unfortunately, this impulsivity often results in violence against his peers.  For example, if another student upsets him, instead of talking it over, he is quick to hit the other student.  Paralleling his impulsivity, he also has trouble focusing his attention in class.  When reading, his eyes often shoot from one page to the next in a near frenzy.  Although he is a very capable learner, this tends to slow him down and affect his comprehension.  It also negatively impacts his behavior, because he cannot focus on the task at hand and ends up in trouble for falling behind.

> If [K.H.] could control his impulsivity and focus his attention, he is sure to receive the highest marks on his report card.

R. at 179.

On November 2, 2009, Ms. West and a long-term substitute teacher completed a teacher questionnaire. R. at 164-71. K.H. was below grade level in written language and on grade level in reading and math. R. at 164. Regarding K.H.'s functioning in acquiring and using information, he had no more than a slight problem in any area, except for an obvious problem in expressing ideas in written form. R. at 165. "When focused and on-task, [K.H.] can succeed at anything. However, this is seldom the case . . . ." R. at 165. Regarding K.H.'s functioning in attending and completing tasks, he had serious and very serious problems in several areas. R. at 166. "This is clearly [K.H.'s] strongest need in school. Staying focused and organized is a huge problem that negatively impacts all scholastic areas." R. at 166. With regard to K.H.'s functioning in interacting and relating with others, his teachers noted some slight and some obvious problems, but no problem with making and keeping friends. R. at 167. K.H. had a serious problem expressing anger appropriately. R. at 167. Further, K.H. had no problems with moving about and manipulating objects. R. at 168. With regard to his ability to care for himself, K.H. had a serious problem with handling frustration appropriately and an obvious problem with responding appropriately to changes in his mood. R. at 169.

E.    **Shakuntala Dhir, M.D.**

On December 15, 2009, Dr. Dhir conducted a consultative psychiatric evaluation of K.H. (R. at 234-36), as summarized by the ALJ: "[K.H.] showed no tics or hyperactivity, was able to be redirected, appeared to have average intelligence, and had a euthymic mood. Dr. Shakuntala [sic] diagnosed ADHD by history and recommended a trial of psychostimulants, combined with individual and behavioral therapy" (R. at 23). Dr. Dhir further stated that K.H. "has poor social functioning" (R. at 235), although he "gets along with his friends as well as peers" and "has no problems with authority figures" (R. at 234).

**F.      Debra (Debora) Perry**

On February 24, 2011, Ms. Perry, K.H.'s math teacher, completed a teacher questionnaire.  R. at 199-206.  Regarding K.H.'s functioning in acquiring and using information, Ms. Perry reported that he had very serious problems in comprehending oral instructions; in understanding, participating, and applying problem-solving skills in class discussions; in providing organized oral explanations and adequate descriptions; and in expressing ideas in written form.  R. at 200.   K.H. had serious problems in understanding school and content vocabulary, in learning new material, and in recalling and applying previously learned material. R. at 200.

Regarding K.H.'s functioning in attending and completing tasks, Ms. Perry opined that he had very serious problems in all areas, noting that he "comes late to class without homework and weekly contract signed."  R. at 201.  With regard to K.H.'s functioning in interacting and relating with others, Ms. Perry opined that he had very serious problems in almost all areas, except in expressing anger and asking permission appropriately, where his problems were only serious.  R. at 202.  Ms. Perry further opined that K.H. had a very serious problem in moving about and manipulating objects because he "is constantly changing his seating in class without permission." R. at 203.

Finally, Ms. Perry opined that, with regard to K.H.'s ability in caring for himself, he had very serious problems in handling frustration appropriately, in being patient when necessary, in identifying and appropriately asserting emotional needs, in responding appropriately to changes in his mood, in using appropriate coping skills to meet daily demands, and in knowing when to ask for help.  R. at 204.  K.H. had an obvious problem in taking care of personal hygiene, a slight

problem in using good judgment regarding personal safety and dangerous circumstances, and no problem in caring for his physical needs.  R. at 204.

**G.      Hearing Testimony**

**1.      K.H.'s Testimony**

K.H. testified at the hearing in March 2011 that he was nine years old, in the third grade, and liked to play video games, flag football, and basketball when he was not in school.  R. at 36-37, 38-39.  He sometimes cooperated with his classmates and admitted that he had trouble paying attention in school (R. at 40) and staying in his seat (R. at 44), but he did not take any medication (R. at 43).  According to K.H., he did not need to be reminded to perform household chores.  R. at 43.

**2.      Plaintiff's Testimony**

Before the hearing, Plaintiff completed a "Child Function Report" on September 29, 2009 (R. at 159-61), on which she stated that K.H. "does have many friends.  He stays to himself a lot. He likes to play video games, or with his toy cars or trucks.  When he does play with others, he also seems to end up in [an argument] because he loses or he wants to be first" (R. at 159). Plaintiff further noted that K.H. "plays with his classmates sometimes.  He likes to play by himself. . . . If he thinks someone is being smart mouthed or disrespectful to him, he gets mad and expresses his anger."  R .at 160.  Plaintiff also remarked that K.H. did "not really" get along with other children outside school, but would "rather stay in the house.  He does play outside, but he always returns home.  He is either mad [because] he can't find anyone to play with or he just wants to play alone."  R. at 161.

Plaintiff further reported that K.H. had to be reminded every day to wash his face and to brush his teeth.  R. at 159.  She "[has] to stand there while he gets dressed and does his hygiene

rituals such as washing face, brush teeth, lotion.  He has to be reminded to get on shoes, jacket.  Gather his homework and book bag.  I put his clothes out for him in the morning."  R. at 159.

At the hearing, Plaintiff testified that K.H. was not in special education, but had behavioral problems "just about every day" with listening to teachers and staying on task.  R. at 48-49.  K.H.'s condition had deteriorated since the first grade.  R. at 51-52.  According to his mother, K.H. "has about two friends" and "stays to himself.  He really doesn't have a lot of friends," and "he's not around a lot of kids all the time."  R. at 61.  She also had to remind him constantly to perform his morning routine of getting up, dressing himself, brushing his teeth, and waiting for the school bus to arrive.  R. at 57.

### III

### Summary of ALJ's Decision

On April 11, 2011, the ALJ found that K.H. (1) had not engaged in substantial gainful activity since the application date of December 31, 2008; and (2) had the severe impairments of ADHD and language disorder; but (3) did not have an impairment or a combination of impairments meeting, medically equaling, or functionally equaling one of the impairments set forth in 20 C.F.R. pt. 404, subpt. P, app. 1.  R. at 21-29.  The ALJ found that K.H.'s impairments did not functionally equal a listed impairment because he did not have an impairment or combination of impairments that resulted in either "marked" limitations in two out of six domains of functioning or "extreme" limitation in one domain of functioning.  R. at 29.  Rather, the ALJ found that he had less than marked limitations in acquiring and using information and in interacting and relating with others, a marked limitation in attending and completing tasks, and no limitation in moving about and manipulating objects, in the ability to care for himself, and in health and physical well-being.  R. at 23-29.

In determining that K.H.'s functional limitation in interacting and relating with others was less than marked, the ALJ found the following:

> [K.H.'s] mother reports that he has many friends, though he prone [sic] to anger and sometimes threatens his friends. [K.H.'s] teachers report a serious problem with expressing anger appropriately, but indicate that [K.H.] has no problem making and keeping friends, using language appropriately, and introducing appropriate topics of conversation.

R. at 26 (citing R. at 159-61, 164-71) (citations omitted).

Further, in determining that K.H.'s functional limitation in attending and completing tasks was marked, the ALJ stated:

> His teachers report very serious problems in focusing long enough to finish a task, refocusing, carrying out multi-step instructions, completing work accurately, and working without distracting himself and others. They report serious problems with carrying out single-step instructions, waiting to take turns, and changing activities without being disruptive.

R. at 25 (citing R. at 164-71).

Moreover, in determining that K.H. had no functional limitation in the ability to care for himself, the ALJ stated that K.H.'s "mother states that he gets ready for school, washes his face, brushes his teeth, puts on his shoes, and gathers his book bag and homework for school with reminders. She does set his clothes out for him." R. at 28 (citing R. at 159-61).

The ALJ accordingly found that K.H. was not disabled since December 31, 2008. R. at 29. In so finding, the ALJ gave "great weight" to the opinions of the state agency medical consultants because they were consistent with the evidence. R. at 23.

## IV

## Disability Determinations and Burden of Proof

An individual under the age of 18 shall be considered disabled "if that individual has a medically determinable physical or mental impairment, which results in marked and severe

functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(C)(i); *see* 20 C.F.R. § 416.906. To determine whether a child has a disability within the meaning of the Social Security Act, the Commissioner follows a three-step sequential evaluation process. 20 C.F.R. §§ 416.924, 416.926a. The first step is a determination whether the child is engaged in substantial gainful activity. *Id.* § 416.924(b). If so, benefits are denied; if not, the evaluation continues to the next step. The second step involves a determination whether a claimant's impairment or combination of impairments is severe, i.e., more than a slight abnormality that causes no more than minimal functional limitations. *Id.* § 416.924(c). If not, benefits are denied; if so, the evaluation continues. The third step involves a determination whether the child has an impairment or impairments that meet, medically equal, or functionally equal in severity a listed impairment. *Id.* § 416.924(d). If so, and if the duration requirement is met, benefits are awarded; if not, benefits are denied.

"A child's functioning is determined by looking at six broad areas, or 'domains,' in an attempt to evaluate 'all of what a child can or cannot do.'" *Woodhouse ex rel. Taylor v. Astrue*, 696 F. Supp. 2d 521, 527 (D. Md. 2010) (quoting 20 C.F.R. § 416.926a(b)(1)). In the domain of "acquiring and using information," the Commissioner considers how well a child acquires or learns information, and how well the child uses the learned information. 20 C.F.R. § 416.926a(g). In the domain of "attending and completing tasks," the Commissioner considers how well a child is able to focus and maintain attention and how well the child begins, carries through, and finishes activities. *Id.* § 416.926a(h). In the domain of "interacting and relating with others," the Commissioner considers how well a child initiates and sustains emotional connections with others, develops and uses the language of the child's community, cooperates

with others, complies with rules, responds to criticism, and respects and takes care of others' possessions. *Id.* § 416.926a(i). In the domain of "moving about and manipulating objects," relating to a child's gross and fine motor skills, the Commissioner considers how the child moves his or her body from one place to another and how the child moves and manipulates things. *Id.* § 416.926a(j). In the domain of "caring for yourself," the Commissioner considers how well a child maintains a healthy emotional and physical state, including how well the child gets his or her physical and emotional wants and needs met in appropriate ways, how the child copes with stress and changes in the environment, and whether the child takes care of his or her own health, possessions, and living area.. *Id.* § 416.926a(k).

Impairments "functionally equal listing-level severity when they produce an 'extreme' limitation in a child applicant's functioning in one domain or 'marked' limitations in functioning in two domains." *Woodhouse*, 696 F. Supp. 2d at 527 (citing 20 C.F.R. § 416.926a(d)). A "marked" limitation in a domain is one that "interferes seriously with [the claimant's] ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(2)(i). "It is the equivalent of the functioning [the Commissioner] would expect to find on standardized testing with scores that are at least two, but less than three, standard deviations below the mean." *Id.* An "extreme" limitation in a domain is one that "interferes very seriously with [the claimant's] ability to independently initiate, sustain, or complete activities." *Id.* § 416.926a(e)(3)(i). "It is the equivalent of the functioning [the Commissioner] would expect to find on standardized testing with scores that are at least three standard deviations below the mean." *Id.*

# V

## Substantial Evidence Standard

The Court reviews an ALJ's decision to determine whether the ALJ applied the correct legal standards and whether the factual findings are supported by substantial evidence. *See Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). In other words, the issue before the Court "is not whether [Plaintiff] is disabled, but whether the ALJ's finding that [Plaintiff] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." *Id.* The Court's review is deferential, as "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Under this standard, substantial evidence is less than a preponderance but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion. *See Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012); *see also Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971).

In evaluating the evidence in an appeal of a denial of benefits, the court does "not conduct a *de novo* review of the evidence," *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986), or undertake to reweigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the Commissioner. *Hancock*, 667 F.3d at 472. Rather, "[t]he duty to resolve conflicts in the evidence rests with the ALJ, not with a reviewing court." *Smith v. Chater*, 99 F.3d 635, 638 (4th Cir. 1996). When conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the ALJ. *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005) (per curiam).

# VI

## Discussion

Plaintiff contends that the ALJ erroneously determined that K.H.'s functional limitations in interacting and relating with others and in the ability to care for himself were less than marked.  Pl.'s Mem. Supp. Mot. Summ. J. 3-11, ECF No. 12-1.  Defendant asserts, however, that substantial evidence supports the ALJ's determination regarding K.H.'s functioning in these two domains.  Def.'s Mem. Supp. Mot. Summ. J. 9-16, ECF No. 14-1.

**A.      K.H.'s Limitation in Interacting and Relating with Others**

In arguing that the ALJ erroneously determined that K.H.'s limitation in interacting and relating with others was less than marked, Plaintiff first maintains that the ALJ failed to evaluate Ms. Perry's opinion as stated on a teacher questionnaire, so "it is impossible to determine whether this evidence was properly rejected, or simply ignored."  Pl.'s Mem. Supp. Mot. Summ. 7, ECF No. 12-1.  Plaintiff also contends that the ALJ erroneously determined that her responses on a "Child Function Report" indicated that K.H. had many friends, contrary to her other statements in the record.  *Id.* at 7-8.  Plaintiff further asserts that the ALJ failed to mention Dr. Dhir's opinion that K.H.'s social functioning was poor.  *Id.* at 8.

With regard to Plaintiff's argument concerning Ms. Perry's responses to a teacher questionnaire, the Commissioner contends that "it is not entirely clear that the ALJ was not referring to all of K.H.'s teachers when he referred to 'claimant's teachers.'"  Def.'s Mem. Supp. Mot. Summ. J. 11, ECF No. 14-1.  The Commissioner further asserts that the ALJ's finding that K.H. had a serious problem with expressing anger was consistent with Ms. Perry's opinion, but, in any event, the ALJ was not required to mention specifically every piece of evidence in the record.  *Id.* at 11-12.

The Commissioner "must consider all the evidence and explain on the record the reasons for [her] findings, including the reason for rejecting relevant evidence in support of the claim." *King v. Califano*, 615 F.2d 1018, 1020 (4th Cir. 1980). "Even if legitimate reasons exist for rejecting or discounting certain evidence, the [Commissioner] cannot do so for no reason or for the wrong reason." *Id.* The Court "cannot determine if findings are unsupported by substantial evidence unless the [Commissioner] explicitly indicates the weight given to all of the relevant evidence." *Gordon v. Schweiker*, 725 F.2d 231, 235 (4th Cir. 1984).

> Unless the [Commissioner] has analyzed all evidence and has sufficiently explained the weight [she] has given to obviously probative exhibits, to say that [her] decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.

*Id.* (quoting *Arnold v. Sec'y of Health, Educ. & Welfare*, 567 F.2d 258, 259 (4th Cir. 1977)) (internal quotation marks omitted).

Although the Commissioner maintains that the ALJ is not required to mention specifically every piece of evidence in the record, the duty of explanation is satisfied "[i]f a reviewing court can discern 'what the ALJ did and why he did it.'" *Piney Mountain Coal Co. v. Mays*, 176 F.3d 753, 762 n.10 (4th Cir. 1999). Here, the Court cannot say that the ALJ's error in failing to discuss and weigh the evidence of Ms. Perry's opinion was harmless. Concerning K.H.'s limitation in interacting and relating with others, Ms. Perry opined that K.H. had very serious problems in all but two of the thirteen activities considered in this domain of functioning, including making and keeping friends, following rules, respecting and obeying adults in authority, and communicating with others generally. R. at 202.

The regulations advise school-age claimants between six and twelve years old:

> When you enter school, you should be able to develop more lasting friendships with children who are your age. You should begin to understand how to work in

groups to create projects and solve problems.  You should have an increasing ability to understand another's point of view and to tolerate differences.  You should be well able to talk to people of all ages, to share ideas, tell stories, and to speak in a manner that both familiar and unfamiliar listeners readily understand.

20 C.F.R. § 416.926a(i)(2)(iv).

The Court thus cannot say that, if credited, the evidence of Ms. Perry's opinion would not lead to a finding of a marked limitation in the domain of interacting and relating with others. Because the ALJ did not explain the weight given to the evidence of Ms. Perry's opinion, the Court **REMANDS** this case for the ALJ to do so in the first instance and declines to address Plaintiff's remaining arguments regarding other evidence of K.H.'s limitation in interacting and relating with others.  *See Bird v. Comm'r of Soc. Sec. Admin.*, 699 F.3d 337, 341 n.1 (4th Cir. 2012) ("Because we conclude that the ALJ committed legal error by failing to consider properly all the record evidence, an assessment of the weight of the evidence must be left to the ALJ on remand in the first instance.").

**B.      K.H.'s Limitation in Caring for Himself**

Plaintiff also contends that the ALJ erroneously determined that K.H.'s limitation in the ability to care for himself was less than marked.  Pl.'s Mem. Supp. Mot. Summ. J. 9-11, ECF No. 12-1.  Plaintiff again points to Ms. Perry's responses to a teacher questionnaire, which the ALJ did not address, that indicate her opinion that K.H. had very serious problems in six of the ten activities considered in this domain of functioning.  R. at 204.  The Commissioner maintains, however, that Plaintiff ignores Ms. Perry's opinion on the questionnaire that K.H. had no problem caring for his physical needs, a slight problem using good judgment regarding his personal safety, and an obvious problem in taking care of personal hygiene, which is consistent with the ALJ's finding.  Def.'s Mem. Supp. Mot. Summ. J. 15, ECF No. 14-1.

The regulations advise claimants:

(i)     Caring for yourself effectively, which includes regulating yourself, depends upon *your ability to respond to changes in your emotions and the daily demands of your environment to help yourself and cooperate with others in taking care of your personal needs, health and safety*. It is characterized by a sense of independence and competence. The effort to become independent and competent should be observable throughout your childhood.

(ii)    Caring for yourself effectively means becoming increasingly independent in making and following your own decisions. This entails relying on your own abilities and skills, and displaying consistent judgment about the consequences of caring for yourself. As you mature, using and testing your own judgment helps you develop confidence in your independence and competence. Caring for yourself includes using your independence and competence to meet your physical needs, such as feeding, dressing, toileting, and bathing, appropriately for your age.

(iii)   Caring for yourself effectively requires you to have a basic understanding of your body, including its normal functioning, and of your physical and emotional needs. *To meet these needs successfully, you must employ effective coping strategies, appropriate to your age, to identify and regulate your feelings, thoughts, urges, and intentions*. Such strategies are based on taking responsibility for getting your needs met in an appropriate and satisfactory manner.

(iv)    Caring for yourself means recognizing when you are ill, following recommended treatment, taking medication as prescribed, following safety rules, responding to your circumstances in safe and appropriate ways, making decisions that do not endanger yourself, and *knowing when to ask for help from others*.

20 C.F.R. § 416.926a(k)(1)(i)-(iv) (emphasis added). The regulations advise school-age children that "[y]ou should begin to recognize that you are competent in doing some activities and that you have difficulty with others. You should be able to identify those circumstances when you feel good about yourself and when you feel bad." *Id.* § 416.926a(k)(2)(iv). "You should begin to develop understanding of what is right and wrong, and what is acceptable and unacceptable behavior. You should begin to demonstrate consistent control over your behavior, and you should be able to avoid behaviors that are unsafe or otherwise not good for you." *Id.* Thus, with

regard to this domain, the regulations contemplate criteria beyond the mere need for reminders with personal hygiene.

Ms. Perry opined that K.H.'s problems with, among other things, knowing when to ask for help, handling frustration appropriately, being patient when necessary, and responding appropriately to changes in his mood were very serious.  R. at 204.  Again, the Court cannot say that, if credited, this evidence would not lead to a finding of a marked limitation in the domain of caring for oneself.  As noted above, an ALJ must explain on the record the weight given to all of the relevant evidence and the reason for rejecting such evidence in support of the claim.  Accordingly, the Court **REMANDS** this case to the Commissioner for further proceedings for her to do so.

**VII**

**<u>Conclusion</u>**

For the foregoing reasons, Defendant's Motion for Summary Judgment (ECF No. 14) is **DENIED**.  Plaintiff's Motion for Summary Judgment (ECF No. 12) is **DENIED**.  Plaintiff's Alternative Motion for Remand (ECF No. 12) is **GRANTED**, and this matter is **REMANDED** for further proceedings.  A separate order shall issue.

Date: July 2, 2014                                      _____/s/_____
                                                        Thomas M. DiGirolamo
                                                        United States Magistrate Judge